## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

THOMAS THIBEAULT,

     Plaintiff,

        v.

THE BOARD OF REGENTS OF
THE UNIVERSITY SYSTEM OF
GEORGIA; JOHN B. BLACK,
individually and in his official capacity
as President of East Georgia College;
and MARY C. SMITH, individually and
in her official capacity as Vice President
for Legal and External Affairs of East
Georgia College,

     Defendants.

Civil Action File No.

**CV610-067**

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Thomas Thibeault (hereinafter "Plaintiff" or "Thibeault") states his complaint against the above-named Defendants as follows:

1.

This is a civil rights action against The Board of Regents of the University System of Georgia ("the Board of Regents"), the President of East Georgia College ("EGC"), John B. Black ("Black"), and Mary C. Smith ("Smith"), EGC's Vice

President for Legal and External Affairs. Plaintiff contends that Black and Smith deprived him of established Constitutional rights by engaging in acts of unlawful retaliation aimed at punishing and chilling protected speech. Plaintiff also contends that Black and Smith retaliated against him in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4.

## JURISDICTION AND VENUE

### 2.

This action challenges Defendants' denial of Thibeault's rights secured under the First and Fourteenth Amendments to the United States Constitution (Art. I, U.S. Constitution, Art. XIV, U.S. Constitution), 42 U.S.C. § 1983, Article 1, Section 1, Paragraph V of the Constitution of the State of Georgia, and the Georgia Whistleblower Act, O.C.G.A. § 45-1-4.

### 3.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction to hear Thibeault's state claims under 28 U.S.C. § 1367(a).

### 4.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because all

Defendants reside within the Statesboro Division of the United States District Court for the Southern District of Georgia, and a substantial part of the events that gave rise to Plaintiff's claims took place within said division.

## PARTIES

### 5.

At all times relevant to this Complaint, Thibeault was an instructor of English at EGC and a "public employee" for purposes of O.C.G.A. § 45-1-4.  He is a resident of Emanuel County, Georgia.

### 6.

The Board of Regents is the governing body of the University System of Georgia, which includes EGC.  EGC is located in Emanuel County, Georgia.  The Board of Regents can be served with the summons and complaint by personal service upon its Chancellor, Erroll B. Davis, Jr., at his office at the Board of Regents located at 270 Washington Street S.W., Suite 7025, Atlanta, Georgia 30334.

### 7.

The Board of Regents is a "public employer" for the purposes of O.C.G.A. § 45-1-4.

8.

At all times relevant to this Complaint, Defendant Black was the President of EGC.  Black is a resident of Emanuel County, Georgia.  Black can be personally served with the summons and complaint at his office at EGC located at 131 College Circle, Swainsboro, Georgia 30401.

9.

At all times relevant to this Complaint, Defendant Smith was the Vice President for Legal and External Affairs at EGC.  Smith is a licensed attorney with the State Bar of Georgia and is a resident of Emanuel County, Georgia.  Smith can be personally served with the summons and complaint at her office at EGC located at 131 College Circle, Swainsboro, Georgia 30401.

## STATEMENT OF FACTS

10.

EGC is a two-year unit of the University System of Georgia.  The main EGC campus is located in Swainsboro, Emanuel County, Georgia.

11.

Thibeault joined the faculty of EGC in August 2004 as an Instructor of English.

12.

Thibeault offered his students a challenging and engaging educational experience. Through word-of-mouth among the EGC student body, Thibeault quickly became one of the most sought-after instructors at EGC.

13.

On August 5, 2009, Thibeault attended a faculty meeting convened for the purpose of training EGC faculty on the school's sexual harassment policy. The meeting was conducted by Smith, who is the chief legal officer of EGC.

14.

At the meeting, Smith explained to the EGC faculty that violations of EGC's sexual harassment policy are determined based on the subjective view of the accuser rather than an objective, reasonable person standard. According to Smith, if the accuser was offended by someone's speech or conduct, the policy has been violated, no matter whether such speech or conduct would offend a reasonable person.

15.

Thibeault openly complained to Smith during the meeting regarding Smith's interpretation of the policy, specifically about the lack of distinction between subjective and objective sexual harassment. Thibeault complained that without a

subjective/objective distinction, certain kinds of speech could violate the policy because it offended a particularly sensitive person, even though a reasonable person would not be offended by the same comment.

16.

To illustrate his concern, Thibeault told Smith that he recently observed one EGC student make a remark to another EGC student that might be subjectively offensive to someone overhearing the remark, even though the remark was not objectively offensive and would not offend a reasonable person.

17.

In response to Thibeault's complaints, Smith confirmed that EGC's sexual harassment policy indeed did not contain a subjective/objective distinction, and that EGC faculty and students would be in violation of the policy if their speech was subjectively offensive to anyone who overhears the remark, no matter the reasonableness or context of the statement.

18.

Thibeault continued to express his legitimate concern to Smith that the lack of a subjective/objective distinction makes EGC's sexual harassment policy prone to improper or malicious use, including intimidation of and retaliation against the students and faculty of EGC.  Thibeault voiced his particular concern regarding the

Page 6

chilling effect that the policy has on the educational environment at EGC, as many students and faculty members would be forced to constantly censor their communications in fear of violating EGC's sexual harassment policy.

19.

Thibeault also asked Smith whether the policy contained provisions to protect EGC faculty and students from false accusations of sexual harassment that were made for malicious reasons.  Smith responded that the policy contained no such protections, and that all accusations of sexual harassment would be treated the same.

20.

Thibeault stated to Smith that, as written, EGC's sexual harassment policy was flawed and would have a detrimental effect on ECG as an institution of higher learning.

21.

Smith was angered by Thibeault's remarks and resented the fact Thibeault had, in her mind, challenged her authority in front of the EGC faculty.

22.

On the very next day, August 6, 2009, Smith began a retaliatory crusade against Thibeault.  Smith summoned numerous EGC faculty and staff members to

her office and demanded that they provide information about their interactions with Thibeault during his tenure with EGC.

23.

Smith used the information provided by the employees she summoned to her office to manufacture a reason to terminate Thibeault using, ironically, the sexual harassment policy that Thibeault warned is prone to malicious, oppressive, and retaliatory application.  Smith requested President Black terminate Thibeault for violating EGC's sexual harassment policy.

24.

The following day, on August 7, 2009, Black called Thibeault to his office. Black told Thibeault that he was a divisive force at EGC and ordered Thibeault to resign immediately.  Black threatened Thibeault, telling him that if he resigned by 11:30 am, he would be given a good recommendation for future positions, but if he refused to resign, his "long history of sexual harassment" would be made public.

25.

Thibeault informed Black that he had never sexual harassed anyone, nor had he ever been accused of sexual harassment.  Thibeault refused to resign in response to Black's threat.

Page 8

26.

Because Thibeault refused to resign, Black fired Thibeault, effective immediately, and had him escorted from EGC property by campus police.  Black told Thibeault that he would be arrested for trespassing if he ever returned to the EGC campus.

27.

That same day, Black sent Thibeault a letter informing him that his employment contract would not be renewed for the 2010-2011 academic year.

28.

At the time of his termination, Thibeault was a non-tenured faculty member of EGC under a one-year tenure-track contract.  A true and exact copy of Thibeault's employment contract with EGC is attached as EXHIBIT A.

29.

Thibeault's contract states that it "is made expressly subject to the . . . statutes and regulations of [EGC] and to the Bylaws and Regulations of the Board of Regents."

30.

Black violated the statutes and regulations of EGC and the Bylaws and Regulations of the Board of Regents by firing Thibeault without following the

procedures established by the statutes and regulations of EGC and the Bylaws and
Regulations of the Board of Regents.  Black's actions also breached Thibeault's
contract with EGC.

31.

In an attempt to remedy the breach of Thibeault's contract, Black reversed
course, and sent Thibeault a letter on August 11, 2009 informing Thibeault that
"EGC *has begun* dismissal proceedings" and that "Pursuant to Board of Regents
Policy 803.09, a faculty committee has been appointed to conduct an informal
inquiry" to decide "*whether or not dismissal proceedings shall be undertaken.*"

32.

After receiving Black's August 11th letter, Thibeault called the Board of
Regents and spoke with Keesha Coleman ("Coleman"), the Board of Regents'
Communications Manager for Legal Affairs.  Thibeault complained to Coleman
about the retaliatory actions of Smith and Black and about Black's violation of the
statutes and regulations of EGC and the Bylaws and Regulations of the Board of
Regents.

33.

Coleman informed Black and Smith of Thibeault's complaints to the Board
of Regents.

Page 10

34.

Thibeault also contacted the Foundation for Individual Rights in Education ("FIRE") and informed FIRE of the circumstances surrounding his termination, including Black's failure to follow the procedures set forth in the statutes and regulations of EGC and the Bylaws and Regulations of the Board of Regents and his belief that EGC had violated his Constitutional rights.

35.

FIRE responded by complaining in writing to the Chancellor of the Board of Regents, Erroll B. Davis, Jr., on August 27, 2009 and by conveying Thibeault's story to FIRE's numerous media contacts.  A true and exact copy of FIRE's letter to Chancellor Davis is attached as EXHIBIT B.

36.

On August 25, 2009, Black sent Thibeault a letter, stating that "the faculty committee has concluded its inquiry" and found "sufficient evidence to support your *suspension*."  The letter continued, "you are about to be terminated for cause for violation of EGC Statutes and Board of Regents Policy concerning sexual harassment. . . . Per Board of Regents Policy 803.09.02, you may request a formal hearing on the charges before a faculty committee."

37.

After receiving the August 25th letter from Black, Thibeault requested the formal hearing referenced in the letter.

38.

On October 20, 2009, Black sent Thibeault another letter, in which he informed Thibeault that he had "referred this matter to the Attorney General's Office for further proceedings" and that "[b]ased on further review, *I have made the decision that the evidence does not warrant the charge of sexual harassment . . . .*" Because there was no evidence of sexual harassment, Black stated in the letter that "*[y]ou are hereby reinstated to your position as Instructor of English.*"

39.

Black's initial decision not to renew Thibeault's contract was based on his false belief that he would be able to justify firing Thibeault using Smith's manufactured sexual harassment allegations.  However, despite Black's admission that there was no evidence of sexual harassment, and despite Black's reinstatement of Thibeault to his position with EGC, Black refused to renew Thibeault's contract for the 2010-2011 academic year.

40.

Black's decision not to renew Thibeault's contract for the 2010-2011

academic year was motivated by retaliation against Thibeault for his complaints to Smith, FIRE, and the Board of Regents regarding the abusive and oppressive application of EGC's sexual harassment policy and his complaints to the Board of Regents regarding Black's violation of the statutes and regulations of EGC and the Bylaws and Regulations of the Board of Regents.

41.

Thibeault's last day as an Instructor of English at EGC was May 7, 2010.

## FIRST CLAIM FOR RELIEF – FREE SPEECH RETALIATION

### Art. I, U.S. Constitution, 42 U.S.C. § 1983

42.

Plaintiff incorporates by reference and realleges paragraphs 1 through 41 of this Complaint.

43.

At all relevant times, Smith and Black were acting within the course and scope of their duties as officers of EGC and under color of state and local law.

44.

The acts alleged above by Smith and Black were committed with deliberate indifference towards Thibeault's constitutionally protected rights.

Page 13

45.

The acts alleged above by Smith and Black were committed intentionally and purposefully in retaliation for Thibeault's exercise of his constitutionally protected rights.

46.

The above-described conduct by Smith and Black violated Thibeault's right to be free from retaliatory treatment based upon the exercise of his freedom of speech under the First Amendment to the United States Constitution (Art. I, U.S. Constitution).

47.

Smith's and Black's retaliatory conduct caused Thibeault significant financial loss and severe emotional distress.

48.

As a direct, legal, and proximate result of Smith's and Black's violations of Thibeault's legal rights, Thibeault has been damaged in an amount to be proven at trial.

49.

Pursuant to 42 U.S.C. § 1983, Smith and Black are individually liable to Thibeault for all damages arising from their violation of Thibeault's constitutional

rights.

50.

Black is the final authority for the Board of Regents with respect to the decision whether to renew Thibeault's employment contract with EGC.  Therefore, the Board of Regents is also liable under 42 U.S.C. § 1983 for Black's unlawful actions taken in that capacity.

51.

Thibeault requests that the Court award compensatory and punitive damages in an amount to be determined according to proof by Plaintiff against Defendants.

## SECOND CLAIM FOR RELIEF – FREE SPEECH RETALIATION

### Article 1, Section 1, Paragraph V of the Georgia Constitution

52.

Plaintiff incorporates by reference and realleges paragraphs 1 through 51 of this Complaint.

53.

The above-described conduct by Smith and Black violated Plaintiff's right to be free from retaliatory treatment based upon the exercise of his freedom of speech under Article 1, Section 1, Paragraph V of the Constitution of the State of Georgia.

54.

Plaintiff requests that the Court award compensatory and punitive damages in an amount to be determined according to proof by Plaintiffs against Defendants.

### THIRD CLAIM FOR RELIEF – RETALIATORY TERMINATION

**Georgia Whistleblower Act, O.C.G.A. § 45-1-4**

**Against Defendant The Board of Regents**

55.

Plaintiff incorporates by reference and realleges paragraphs 1 through 54 of this complaint.

56.

Pursuant to O.C.G.A. § 45-1-4(b) and (d)(2), it is unlawful for a public employer to retaliate against a public employee for disclosing fraud, waste, abuse, or violations of law, rules, or regulations, in relation to any state programs or operations under the jurisdiction of such public employer.

57.

Smith and Black conspired to terminate Thibeault and thereafter refused to renew his employment contract in retaliation for making disclosures protected under O.C.G.A. § 45-1-4.

58.

The Board of Regents is liable for all economic and non-economic damages resulting from Smith's and Black's acts of retaliation.  O.C.G.A. § 45-1-4(e)(2)(D) and (E).

59.

Thibeault is entitled to reinstatement with EGC, as well as restoration of all benefits of employment lost as a result of his termination.   O.C.G.A. § 45-1-4(e)(2)(B) and (C).

60.

Thibeault is entitled to recover his attorneys' fees and all other costs of litigation.  O.C.G.A. § 45-1-4(f).

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff demands that a trial by jury be had on all Counts and that following such trial judgment be entered on Plaintiff's behalf against Defendants granting the following relief:

(i)     Reinstatement of Plaintiff with back pay and such benefits as Plaintiff would have enjoyed had he never been terminated;

(ii)    If reinstatement is deemed inappropriate under the circumstances, the Board of Regents be ordered to compensate Plaintiff with three years of front pay;

(iii)   Compensatory damages in an amount to be proven at trial to compensate Plaintiff for the diminished future earning capacity, mental anguish, humiliation, pain and suffering, and such other damages as resulted from Defendants' improper conduct;

(iv)   Plaintiff's costs of this action including reasonable attorneys' fees;

(v)   Punitive damages in an amount to be determined by the enlightened conscience of an impartial jury as warranted to deter Defendants from future wrongful conduct of the type proven at trial;

(vi)   Such further and additional relief as the Court may deem is appropriate.

Respectfully submitted on August 4, 2010.

/s/ A. Lee Parks _____
A. Lee Parks
Georgia Bar No. 563750
Counsel for Plaintiff

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street, 26th Floor
Atlanta, Georgia 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
lparks@pcwlawfirm.com