

**Foundation for Individual Rights in Education**

601 Walnut Street, Suite 510 • Philadelphia, Pennsylvania 19106
T 215-717-3473 • F 215-717-3440 • fire@thefire.org • www.thefire.org

Greg Lukianoff
PRESIDENT

Robert L. Shibley
VICE PRESIDENT

William Creeley
DIRECTOR OF LEGAL AND
PUBLIC ADVOCACY

Alan Charles Kors
CO-FOUNDER AND
CHAIRMAN EMERITUS

BOARD OF DIRECTORS

Harvey A. Silverglate
CO-FOUNDER AND
CHAIRMAN

Barbara Bishop
William J. Hume
Richard Losick
Joseph M. Maline
Marlene Mieske
Daphne Patai
Virginia Postrel
Daniel Shuchman
James E. Wiggins

BOARD OF ADVISORS

Lloyd Buchanan
T. Kenneth Cribb, Jr.
Candace de Russy
William A. Dunn
Benjamin F. Hammond
Nat Hentoff
Roy Innis
Wendy Kaminer
Woody Kaplan
Leonard Liggio
Herbert London
Peter L. Malkin
Muriel Morisey
Steven Pinker
Milton Rosenberg
John R. Searle
Ricky Silberman
Christina Hoff Sommers

August 27, 2009

Chancellor Erroll B. Davis Jr.
Office of the Chancellor
Board of Regents of the University System of Georgia
Suite 7025
270 Washington Street, SW
Atlanta, Georgia 30334

*Sent via U.S. Mail and Facsimile (404-657-6979)*

Dear Chancellor Davis:

The Foundation for Individual Rights in Education (FIRE) last wrote you on October 23, 2007, after Valdosta State University's former president, Ronald Zaccari, expelled a student in violation of the student's rights to freedom of speech and due process. It is unfortunate that FIRE must write you a second time today. FIRE is gravely concerned about the threats to freedom of speech and due process presented by East Georgia College's (EGC's) August 7, 2009, firing of professor Thomas Thibeault.

Thibeault has documented—and EGC President John Bryant Black has foregone an opportunity to deny—that Black personally fired Thibeault without a hearing and then had him escorted off of EGC's campus by police, as a result of Thibeault's expressed concerns about EGC's sexual harassment policy. According to Thibeault, Black summarily fired him for "sexual harassment" without presenting any evidence whatsoever. Further communication between Thibeault and a colleague has revealed that one day after Thibeault expressed his concerns, his colleagues were pressured to produce evidence of "sexual harassment." A central item of evidence apparently was Thibeault's reading aloud of non-sexual excerpts from the book *An Encyclopedia of Assholes* to colleagues in a faculty break room—with the alleged element of "sexual harassment" arising simply from the book's title. Black has therefore effectively fired a professor for engaging in speech protected by the First Amendment. Perhaps even worse, it appears that Black and EGC have denied Thibeault any semblance of the due process to which he is entitled under the Fifth and Fourteenth Amendments and have ignored established protocol for faculty punishment.

This is our understanding of the facts. Please inform us if you believe we are in error.

Exhibit B

According to Thibeault, on August 5, 2009, he protested against certain aspects of EGC's sexual harassment policy during a faculty training meeting regarding the policy. For example, according to Thibeault, he protested against the statement by Mary Smith, Vice President for Legal Affairs (who conducted the training session and took questions), that the subjective "feelings of the offended were proof of the offensive nature" of alleged harassing behavior. When Thibeault presented a scenario regarding a different professor and asked, "[W]hat provision is there in the Sexual Harassment policy to protect the accused against complaints which are malicious or, in this case[,] ridiculous," Smith replied that there is no such provision, and Thibeault responded that "the policy itself is flawed."

Thibeault reports that on the next day, his colleagues were pressed to certify certain long-passed events as a basis on which to fire him. He has reported to us, on the basis of a telephone conversation with Professor Alan Brasher on August 10, that Brasher was called into Smith's office on August 6, 2009, and asked about his recollection of a "gift book" from which Thibeault had read. Apparently, Smith was writing up an allegation along the lines that Thibeault "had exposed the faculty to offensive material in the form of an offensive book title." The book, *An Encyclopedia of Assholes*, is primarily about public figures who are said to deserve the appellation "assholes," such as Presidents Bill Clinton and George W. Bush. Thibeault told FIRE that in September 2008, he shared completely non-sexual excerpts from the book with other faculty members in a break room at the college. (Since Thibeault was never presented with any evidence of alleged sexual harassment, however, neither he nor FIRE can be absolutely sure that EGC used the book's title against him.)

Although Thibeault reports that he has never been told of any sexual harassment complaints filed against him, on the following day, August 7, Thibeault was summoned to Black's office. Thibeault recorded a written account of the meeting, dated August 20, 2009, and asked Black to verify this account:

> Please verify this record of the meeting. If I do not hear from you within three days, I will presume that you agree with this account of our meeting

Black did not respond. According to this account, Thibeault met with Black and Smith. Black

> commenced the meeting by stating that I [Thibeault] **was a divisive force in the college at a time when the college needed unity** for the forthcoming SACS inspection. You [Black] then informed me that you were canceling my present contract and all future contracts on the grounds of sexual harassment. You claimed that I have a "long history o[f] sexual harassment which includes smutty jokes, foul language, obscenities, and innuendo.["]

> I asked you for proof of these allegations, and you stated that, if you received my resignation by 11:30, nothing more would be done and that you would provide me with a good reference for my next teaching position. If you did not receive my resignation by 11:30, you would dismiss me and that my "long history of sexual harassment would be made public."

> You also informed me that Police Chief [Drew] Durden was waiting for me and that he would escort me to my office where I was to remove all personal possessions. I was to give my keys to Chief Durden who would escort me off the premises. You also informed me **not to speak further and disrupt the work of the college.** You told me that you had informed the Swainsboro Sheriff's Department that, if I were found on East Georgia College property, they were to arrest me and charge me with trespass. [Emphasis added.]

According to Thibeault, he has filed an appeal with you that he believes you received yesterday. In his account to you, he writes similarly:

> On August 5, 2009, during a faculty training session discussing the Sexual Harassment Policy, I criticized the policy for being unworkable because it was impossible to "never give offense." I asked if the policy protected the accused against false or malicious accusation. Dr. Smith told the faculty that "there is no such provision." Therefore, there is no appeal within the policy.
>
> On August 7, 2009, I was fired by Dr. Black on the grounds of sexual harassment. During my seven years working for the USG as an English instructor, no student, faculty, staff member or colleague has ever accused me of sexual harassment. The only time I have ever heard this accusation made against me was when Dr. Black fired me.

## EGC HAS PUNISHED THIBEAULT FOR PROTECTED EXPRESSION

As a public institution funded by taxpayers, EGC is bound by the First Amendment to the United States Constitution and may not violate the expressive rights of its faculty members. Given Thibeault's unchallenged account of events, President Black's firing of Thibeault cannot be considered as anything other than a deliberate decision to punish a faculty member for engaging in constitutionally protected expression, in direct violation of Black's and EGC's legal and moral obligations under the First Amendment.

Black apparently has taken punitive action against Thibeault not only on the basis of his protected expression, but also on the basis of his criticism of a college policy in the precise context where such a policy was meant to be discussed. Furthermore, Black and Smith appear to have used the word "assholes" *in a book title* as evidence to support a sexual harassment claim, in contravention of any objective standard of evidence for such a claim.

Under even the most rudimentary definition of freedom of expression, people are allowed to be rude or engage in criticism of government action. The Supreme Court has explicitly held on numerous occasions that speech cannot be restricted simply because it offends people. In *Street v. New York*, 394 U.S. 576, 592 (1969), the Court held that "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." In *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 670 (1973), the Court held that "the mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the

name alone of 'conventions of decency.'" In *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949), the Court held that "a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." In *Texas v. Johnson*, 491 U.S. 397, 414 (1989), the Court explained the rationale behind these decisions well, saying that "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Under these standards, there can be no question that reading non-sexual material out of the book *An Encyclopedia of Assholes* is protected by the First Amendment. Nor can there be any rational basis for trumping up sexual harassment charges against a professor who registered concerns about the college's sexual harassment policy during an event specifically about that policy.

## EGC HAS VIOLATED THIBEAULT'S RIGHT TO DUE PROCESS

The circumstances of Thibeault's firing represent a blatant violation of both EGC's own established hearing procedures and Thibeault's Fifth and Fourteenth Amendment rights to due process.

According to EGC's *Faculty Handbook*, section 6.5.1, EGC follows the *Policy Manual* of the Board of Regents of the University System of Georgia, which provides that "dismissal or other sanctions" for alleged sexual harassment must only come "*after compliance with procedural due process requirements*" (emphasis added). *Faculty Handbook* section 6.5.4 provides that after a formal complaint is filed:

> An investigation into the incident will be conducted by the vice president for student services, the vice president for academic affairs, the vice president for fiscal affairs, or the president. Appropriate action will be taken. Any appeal as a result of the investigation shall be made to the president of the college. Any appeal of a decision of the president shall be made to the Board of Regents.

Thibeault's appeal is thus properly before you, but his case never should have reached this point in the first place. EGC has entirely failed to provide Thibeault with notice of the charges, a hearing, the evidence against him, an opportunity to challenge specific accusers, or a chance to respond to any alleged evidence. Nor did EGC produce any evidence that any individual ever alleged sexual harassment under any definition, nor did EGC produce any formal report of sexual harassment. Except for the right to appeal, which Thibeault found for himself, the unconscionable treatment of Thibeault provided virtually none of the procedural protections afforded a faculty member in accordance with the constitutional requirement of due process. Black's willful disregard for existing EGC policy betrays his contempt for the constitutional right to due process by which EGC is legally bound.

## CONCLUSION

To fire a professor, as Black has done to Thibeault, is the harshest punishment a college may issue. To do so without affording that professor even the slightest fragment of the due process

protections required by the Constitution and rudimentary standards of fairness is unconstitutional, unlawful, and immoral.

Thomas Thibeault cannot legally be fired by EGC and deprived of his constitutional right to due process for engaging in speech protected by the First Amendment. FIRE requests that your administration immediately act to reinstate Thibeault, reverse the no-trespass warning against him, and ensure that any record of this matter be expunged from his administrative record.

We urge EGC and the Board of Regents to show the courage necessary to admit EGC's error. Please spare the University System of Georgia the deep embarrassment of fighting once again against the Constitution and its Bill of Rights, by which EGC and the University System of Georgia are legally and morally bound. While we hope this situation can be resolved amicably and swiftly, we are committed to using all of our resources to see this situation through to a just and moral conclusion.

We have enclosed a waiver from Thomas Thibeault which authorizes you to fully discuss his case with us. FIRE asks for your timely response by Thursday, September 3, 2009. We look forward to hearing from you.

Sincerely,

Adam Kissel
Director, Individual Rights Defense Program

cc:
J. Burns Newsome, Associate Vice Chancellor, Board of Regents of the University System of Georgia
Robert F. Hatcher, Chair, Board of Regents of the University System of Georgia
Willis J. Potts Jr., Vice Chair, Board of Regents of the University System of Georgia
Kenneth R. Bernard Jr., Board of Regents of the University System of Georgia
James A. Bishop, Board of Regents of the University System of Georgia
Frederick E. Cooper, Board of Regents of the University System of Georgia
Larry R. Ellis, Board of Regents of the University System of Georgia
Felton Jenkins, Board of Regents of the University System of Georgia
W. Mansfield Jennings Jr., Board of Regents of the University System of Georgia
James R. Jolly, Board of Regents of the University System of Georgia
Donald M. Leebern Jr., Board of Regents of the University System of Georgia
William NeSmith Jr., Board of Regents of the University System of Georgia
Doreen Stiles Poitevint, Board of Regents of the University System of Georgia
Wanda Yancey Rodwell, Board of Regents of the University System of Georgia
Kessel Stelling Jr., Board of Regents of the University System of Georgia
Benjamin J. Tarbutton III, Board of Regents of the University System of Georgia
Richard L. Tucker, Board of Regents of the University System of Georgia
Allan Vigil, Board of Regents of the University System of Georgia

Larry Walker, Board of Regents of the University System of Georgia
Keesha L. Coleman, Project and Communications Manager, Board of Regents of the University System of Georgia
John Black, President, East Georgia College
Mary C. Smith, Vice President for Legal Affairs, East Georgia College
Timothy D. Goodman, Vice President for Academic Affairs, East Georgia College
Donald D. Avery, Vice President for Enrollment & Student Services, East Georgia College
Susan Wagner-Craven, Vice President for Fiscal Affairs, East Georgia College
Tracy M. Woods, Director of Human Resources, East Georgia College
Carmine D. Palumbo, Chair, Division of Humanities, East Georgia College
Division of Humanities faculty, East Georgia College

Encl.